MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MARTIN GONZALEZ SANCHEZ, LEDIZ
MARIN, HECTOR GONZALEZ SANCHEZ,
LEONCIO NOE, and DAMASO CESAR
GONZALEZ ROMANO (A.K.A CESAR
GONZALEZ), *individually and on behalf of*
*others similarly situated,*

     *Plaintiffs*,

    -against-

Y AND P ENTERPRISES INC (D/B/A
CORNER CAFE & BAKERY), PAUL
DIMINO, YURA MOHR, LUCAS SANTOS,
and SUSIE DOE,

     *Defendants.*

--------------------------------------------------------X

          **COMPLAINT**


      **COLLECTIVE ACTION UNDER**
       **29 U.S.C. § 216(b)**

         **ECF Case**

   Plaintiffs Martin Gonzalez Sanchez, Lediz Marin, Hector Gonzalez Sanchez, Leoncio Noe, and Damaso Cesar Gonzalez Romano (a.k.a Cesar Gonzalez) , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Y AND P ENTERPRISES INC (d/b/a Corner Cafe & Bakery), ("Defendant Corporation"), Paul Dimino, Yura Mohr, Lucas Santos and  Susie Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## <u>NATURE OF ACTION</u>

  1.  Plaintiffs are former employees of Defendants Y AND P ENTERPRISES INC (d/b/a Corner Cafe & Bakery), Paul Dimino, Yura Mohr, Lucas Santos and Susie Doe.

2.      Defendants own, operate, or control a cafe bakery, located at 1645 3rd Ave New York, New York 10128.

3.      Upon information and belief, individual Defendants Paul Dimino, Yura Mohr, Lucas Santos and Susie Doe, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the café bakery as a joint or unified enterprise.

4.      Plaintiffs were employed as a food preparer, a sandwich maker, a dishwasher and line cook, a salad preparer, and a baker at the café bakery.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime and spread of hours compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

8.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

9.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

10.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

11.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of

1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

12.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

14.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a cafe bakery located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

15.     Plaintiff Martin Gonzalez Sanchez ("Plaintiff Gonzalez" or "Mr. Gonzalez") is an adult individual residing in Bronx County, New York.

16.     Plaintiff Gonzalez was employed by Defendants at Corner Cafe and Bakery from approximately November 23, 2008 until on or about March 29, 2020.

17.     Plaintiff Lediz Marin ("Plaintiff Marin" or "Mr. Marin") is an adult individual residing in Bronx County, New York.

18.     Plaintiff Marin was employed by Defendants at Corner Cafe & Bakery from approximately 2006 until on or about March 13, 2020.

19.     Plaintiff Hector Gonzalez Sanchez ("Plaintiff Sanchez" or "Mr. Sanchez") is an adult individual residing in Hartford County, Connecticut.

20.     Plaintiff Sanchez was employed by Defendants at Corner Cafe & Bakery from approximately 2014 until on or about February 23, 2020.

21.     Plaintiff Leoncio Noe ("Plaintiff Noe" or "Mr. Noe") is an adult individual residing in Bronx County, New York.

22.     Plaintiff Noe was employed by Defendants at Corner Cafe & Bakery from approximately 2011 until on or about March 15, 2020.

23.     Plaintiff Damaso Cesar Gonzalez Romano (a.k.a Cesar Gonzalez) ("Plaintiff Cesar" or "Mr. Cesar") is an adult individual residing in New York County, New York.

24.     Plaintiff Cesar was employed by Defendants at Corner Cafe & Bakery from approximately 2000 until on or about March 23, 2020.

*Defendants*

25.     At all relevant times, Defendants owned, operated, or controlled a café bakery, located in the Upper East Side Section of Manhattan.

26.     Upon information and belief, Y AND P ENTERPRISES INC (d/b/a Corner Cafe & Bakery) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1645 3rd Ave, New York, NY 10128.

27.     Defendant Paul Dimino is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Paul Dimino is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Paul Dimino possesses operational control over Defendant Corporation, an ownership interest in Defendant

- 4 -

Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.     Defendant Yura Mohr is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Yura Mohr is sued individually in her capacity as owner, officer and/or agent of Defendant Corporation. Defendant Yura Mohr possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.     Defendant Lucas Santos is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Lucas Santos is sued individually in his capacity as a manager of Defendant Corporation. Defendant Lucas Santos possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.     Defendant Susie Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Susie Doe is sued individually in her capacity as owner, officer and/or agent of Defendant Corporation. Defendant Susie Doe possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

31.     Defendants operate a café bakery located in the Upper East Side section of Manhattan in New York City.

32.     Individual Defendants, Paul Dimino, Yura Mohr, Lucas Santos, and Susie Doe, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

33.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

34.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

35.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

36.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

37.     Upon information and belief, Individual Defendants Paul Dimino, Yura Mohr, and Susie Doe operate Defendant Corporation as either an alter ego of themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

> a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f) intermingling assets and debts of their own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

38.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

39.     In each year from 2015 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

40.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the café bakery such as food and beverages on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

41.     Plaintiffs are former employees of Defendants who were employed as a food preparer, a sandwich maker, a dishwasher and line cook, a salad preparer, and a baker.

42.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Martin Gonzalez Sanchez*

43.     Plaintiff Gonzalez was employed by Defendants from approximately November 23, 2008 until on or about March 29, 2020.

44.     Defendants employed Plaintiff Gonzalez as a food preparer and a sandwich maker.

45.     Plaintiff Gonzalez regularly handled goods in interstate commerce, such as food and beverages and other supplies produced outside the State of New York.

46.     Plaintiff Gonzalez's work duties required neither discretion nor independent judgment.

47.     Throughout his employment with Defendants, Plaintiff Gonzalez regularly worked in excess of 40 hours per week.

48.     From approximately January 2015 until on or about 2018, Plaintiff Gonzalez worked from approximately 5:00 a.m. until on or about 4:00 p.m., Sundays through Fridays (typically 66 hours per week).

49.     However, from approximately January 2015 until on or about 2018, in the months of September, November, December and March, Plaintiff Gonzalez worked three weeks each month from approximately 5:00 a.m. until on or about 4:00 p.m., 7 days a week (typically 77 hours per week).

50.     From approximately 2018 until on or about March 2020, Plaintiff Gonzalez worked Sundays through Fridays from approximately 6:00 a.m. until on or about 3:00 p.m., 4 days per week and from approximately 6:00 a.m. until on or about 4:00 p.m., 2 days per week (typically 56 hours per week).

51.     From approximately January 2015 until on or about 2016, Defendants paid Plaintiff Gonzalez his wages in cash.

52.     From approximately 2017 until on or about July 2018, Defendants paid Plaintiff Gonzalez his wages by check.

53.     From approximately August 2018 until on or about March 2020, Defendants paid Plaintiff Gonzalez his wages in a combination of check and cash.

54.     From approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Gonzalez $12 per hour.

55.     From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Gonzalez $15 per hour.

56.     From approximately January 2017 until on or about July 2018, Defendants paid Plaintiff Gonzalez $16 per hour and $24 for overtime.

57.     From approximately August 2018 until on or about March 29, 2020, Defendants paid Plaintiff Gonzalez $19 per hour and $28.50 for overtime.

58.     Plaintiff Gonzalez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

59.     For example, from approximately January 2015 until on or about December 2019 Defendants required Plaintiff Gonzalez to start working 1 hour prior to his scheduled start time two times per month, and did not pay him for the additional time he worked.

60.     Prior to 2018, Defendants never granted Plaintiff Gonzalez any breaks or meal periods of any kind.

61.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gonzalez regarding overtime and wages under the FLSA and NYLL.

62.     Defendants did not provide Plaintiff Gonzalez an accurate statement of wages, as required by NYLL 195(3).

63.     Defendants did not give any notice to Plaintiff Gonzalez, in English and in Spanish (Plaintiff Gonzalez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

64.     Defendants required Plaintiff Gonzalez to purchase "tools of the trade" with his own funds—including a kitchen knife.

*Plaintiff Lediz Marin*

65.     Plaintiff Marin was employed by Defendants from approximately 2006 until on or about March 13, 2020.

66.     Defendants employed Plaintiff Marin as a salad preparer.

67.     Plaintiff Marin regularly handled goods in interstate commerce, such as food and beverages and other supplies produced outside the State of New York.

68.     Plaintiff Marin's work duties required neither discretion nor independent judgment.

69.     Throughout his employment with Defendants, Plaintiff Marin regularly worked in excess of 40 hours per week.

70.     From approximately January 2015 until on or about December 2018, Plaintiff Marin worked from approximately 5:00 a.m. until on or about 5:00 p.m., Mondays through Saturdays (typically 72 hours per week).

71.     However, from approximately January 2015 until on or about December 2018, in the months of September, November and December, Plaintiff Marin worked one week each month from approximately 3:00 a.m. until on or about  7:00 p.m. four days a week and from approximately 5:00 a.m. until on or about 5:00 p.m. two days a week (typically 92 hours per week).

72.     From approximately January 2019 until on or about March 2020, Plaintiff Marin worked from approximately 5:00 a.m. until on or about 4:00 p.m., Mondays through Saturdays (typically 66 hours per week).

73.     Throughout his employment, Defendants paid Plaintiff Marin his wages in cash.

74.     From approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Marin $12 per hour.

75.     From approximately January 2016 until on or about December 2017, Defendants paid Plaintiff Marin $12.50 per hour.

76.     From approximately January 2018 until on or about March 2020, Defendants paid Plaintiff Marin $15 per hour.

77.     Plaintiff Marin's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

78.     For example, Defendants required Plaintiff Marin to work 1 hour past his scheduled departure time every day, and did not pay him for the additional time he worked.

79.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Marin regarding overtime and wages under the FLSA and NYLL.

80.     Defendants did not provide Plaintiff Marin an accurate statement of wages, as required by NYLL 195(3).

81.     Defendants did not give any notice to Plaintiff Marin, in English and in Spanish (Plaintiff Marin's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Hector Gonzalez Sanchez*

82.     Plaintiff Sanchez was employed by Defendants from approximately 2014 until on or about February 23, 2020.

83.     Defendants employed Plaintiff Sanchez as a baker and supervisor.

84.     Plaintiff Sanchez regularly handled goods in interstate commerce, such as food and beverages and other supplies produced outside the State of New York.

85.     Plaintiff Sanchez's work duties required neither discretion nor independent judgment.

86.     Throughout his employment with Defendants, Plaintiff Sanchez regularly worked in excess of 40 hours per week.

87.     From approximately January 2015 until on or about April 2015, Plaintiff Sanchez worked from approximately 6:00 p.m. until on or about 4:00 a.m. to 6:00 a.m., Thursdays through Tuesdays (typically 60 to 72 hours per week).

88.     However, from approximately January 2015 until on or about April 2015, Plaintiff Sanchez worked one week each month from approximately 6:00 p.m. until on or about 4:00 a.m. to 6:00 a.m., 7 days a week (typically 70 to 84 hours per week).

89.     From approximately May 2015 until on or about May 2016, Plaintiff Sanchez worked from approximately 5:00 p.m. until on or about 3:00 a.m., Thursdays through Tuesdays (typically 60 hours per week).

90.     From approximately June 2016 until on or about June 2018, Plaintiff Sanchez worked from approximately 6:00 p.m. until on or about 4:00 a.m., Saturdays through Thursdays (typically 60 hours per week).

91.     However, from approximately June 2016 until on or about December 2016 Plaintiff Sanchez worked one week each month from approximately 6:00 p.m. until on or about 6:00 a.m., 7even days a week (typically 84 hours per week).

92.     Similarly, from approximately January 2017 until on or about December 2017, Plaintiff Sanchez worked one week each month from approximately 6:00 p.m. until on or about 4:00 a.m., 7 days a week (typically 70 hours per week).

93.     From approximately July 2018 until on or about December 2018, Plaintiff Sanchez worked from approximately 4:00 p.m. until on or about 2:00 a.m. to 4:00 a.m., Saturdays through Thursdays (typically 60 to 72 hours per week).

94.     From approximately January 2019 until on or about November 2019, Plaintiff Sanchez worked from approximately 4:00 p.m. until on or about 12:00 a.m. to 1:00 a.m., Saturdays, Sundays, Mondays, Tuesdays and Thursdays (typically 40 to 45 hours per week).

95.     From approximately December 2019 until on or about February 23, 2020, Plaintiff Sanchez worked from approximately 4:00 p.m. until on or about 2:00 a.m., 6 days a week Saturdays through Thursdays (typically 60 hours per week).

96.     From approximately January 2015 to January 2019, Defendants paid Plaintiff Sanchez his wages in cash.

97.     From approximately February 2019 until on or about February 2020, Defendants paid Plaintiff Sanchez his wages by check.

98.     From approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Sanchez $9.50 per hour.

99.     From approximately January 2016 until on or about December 2017, Defendants paid Plaintiff Sanchez $11 per hour.

100.    From approximately January 2018 until on or about May 2019, Defendants paid Plaintiff Sanchez $15 per hour.

101.    From approximately June 2019 until on or about February 2020, Defendants paid Plaintiff Sanchez $17 per hour.

102.    Plaintiff Sanchez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

103.    For example, Defendants required Plaintiff Sanchez to work 1 hour past his scheduled departure time once a week, and did not pay him for the additional time he worked.

104.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Sanchez regarding overtime and wages under the FLSA and NYLL.

105.     Defendants did not provide Plaintiff Sanchez an accurate statement of wages, as required by NYLL 195(3).

106.     In fact, Defendants adjusted Plaintiff Sanchez's paystubs so that they reflected inaccurate wages and hours worked.

107.     Defendants did not give any notice to Plaintiff Sanchez in English and in Spanish (Plaintiff Sanchez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).


*Plaintiff Leoncio Noe*

108.     Plaintiff Noe was employed by Defendants from approximately 2011 until on or about March 15, 2020.

109.     Defendants employed Plaintiff Noe as a dishwasher, a food prep, and then in 2015 he became a line cook.

110.     Plaintiff Noe regularly handled goods in interstate commerce, such as food and beverages and other supplies produced outside the State of New York.

111.     Plaintiff Noe's work duties required neither discretion nor independent judgment.

112.     Throughout his employment with Defendants, Plaintiff Noe regularly worked in excess of 40 hours per week.

113.     From approximately 2015 until on or about 2018, Plaintiff Noe worked from approximately 10:00 a.m. until on or about 11:00 p.m., 4 days a week and from approximately 10:00 a.m. until on or about 12:00 a.m., 2 days a week (typically 80 hours per week).

114.     From approximately early to mid-2018 until December 2018, Plaintiff Noe worked from approximately 10:00 a.m. until on or about 11:00 p.m., 6 days a week and from approximately 10:00 a.m. until on or about 12:00 a.m., 1 day a week (typically 92 hours per week).

115.    From approximately 2019 until on or about March 2020, Plaintiff Noe worked from approximately 10:00 a.m. until on or about 11:00 p.m., 5 days a week and from approximately 10:00 a.m. until on or about 12:00 a.m., 1 day a week (typically 79 hours per week).

116.    Throughout his employment, Defendants paid Plaintiff Noe his wages in cash.

117.    From approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Noe $13 per hour.

118.    From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Noe $14 per hour.

119.    From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Noe $15 per hour.

120.    From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Noe $16 per hour.

121.    From approximately January 2019 until on or about March 2020, Defendants paid Plaintiff Noe $17 per hour.

122.    Plaintiff Noe's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

123.    For example, Defendants required Plaintiff Noe to work 1 hour past his scheduled departure time 1 or 2 days a week, and did not pay him for the additional time he worked.

124.    From approximately 2015 until on or about March 2020, Defendants never granted Plaintiff Noe any breaks or meal periods of any kind.

125.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Noe regarding overtime and wages under the FLSA and NYLL.

126.    Defendants did not provide Plaintiff Noe an accurate statement of wages, as required by NYLL 195(3).

- 15 -

127.     Defendants did not give any notice to Plaintiff Noe, in English and in Spanish (Plaintiff Noe's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Damaso Cesar Gonzalez Romano (a.k.a Cesar Gonzalez)*

128.     Plaintiff Cesar was employed by Defendants from approximately 2000 until on or about March 23, 2020.

129.     Defendants employed Plaintiff Cesar as a baker.

130.     Plaintiff Cesar regularly handled goods in interstate commerce, such as food and beverages and other supplies produced outside the State of New York.

131.     Plaintiff Cesar's work duties required neither discretion nor independent judgment.

132.     Throughout his employment with Defendants, Plaintiff Cesar regularly worked in excess of 40 hours per week.

133.     From approximately January 2015 until on or about 2017, Plaintiff Cesar worked from approximately 6:00 p.m. until on or about 3:00 a.m. to 5:00 a.m., Sundays through Thursdays (typically 54 to 66 hours per week).

134.     From approximately 2017 until on or about 2019, Plaintiff Cesar  worked from approximately 4:00 p.m. until on or about 3:00 a.m., Sundays through Thursdays (typically 66 hours per week).

135.     From approximately 2019 until on or about March 23, 2020, Plaintiff Cesar worked from approximately 4:00 p.m. until on or about 1:00 a.m. to 2:00 a.m., Sundays through Thursdays (typically 54 to 60 hours per week).

136.     Throughout his employment, Defendants paid Plaintiff Cesar his wages in cash.

137.     From approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Cesar $12 per hour.

138.    From approximately January 2016 until on or about December 2018, Defendants paid Plaintiff Cesar $13 per hour.

139.    From approximately January 2019 until on or about December 2019, Defendants paid Plaintiff Cesar $15 per hour.

140.    From approximately January 2020 until on or about March 23, 2020, Defendants paid Plaintiff Cesar $15 per hour and $22.50 for hours over 40.

141.    Plaintiff Cesar's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

142.    For example, Defendants required Plaintiff Cesar to work 2 hours past his scheduled departure time from 2015 to 2017, and 1 hour past his scheduled departure time from 2019 to March 23, 2020, and did not pay him for the additional time he worked.

143.    Defendants never granted Plaintiff Cesar any breaks or meal periods of any kind.

144.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cesar regarding overtime and wages under the FLSA and NYLL.

145.    Defendants did not provide Plaintiff Cesar an accurate statement of wages, as required by NYLL 195(3).

146.    Defendants did not give any notice to Plaintiff Cesar, in English and in Spanish (Plaintiff Cesar's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

147.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate spread of hours pay and overtime compensation as required by federal and state laws.

148.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

149.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

150.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

151.    Defendants paid Plaintiffs their wages in cash, in a combination of check and cash or by check.

152.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

153.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

154.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

155.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

156.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece,

commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

157.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

158.    Plaintiffs bring their FLSA overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

159.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA and willfully failing to keep records under the FLSA.

160.    The claims of Plaintiffs stated herein are similar to those of the other employees.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA**

161.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

162.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

163.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

164.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

165.  Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

166.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

167.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA**

168.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

169.    At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class members), controlled the terms and conditions of employment, and determined the rate and

method of any compensation in exchange for their employment.

170.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

171.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203 (r-s).

172.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

173.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

174.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

175.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

176.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

177.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

178.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

179.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

180.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

181.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

182.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

183.     Plaintiffs were damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

184.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

185.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 146-1.6.

186.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

187.     Plaintiffs were damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

188.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

189.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

190.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

191.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

192.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

193.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

194.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

195.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

196.     Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

197.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

198.     Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

199.     Defendants are liable to each Plaintiff in an amount to be determined at trial.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)      Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(e)      Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)      Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(j)      Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(k)      Declaring that Defendants violated the notice requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)      Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(m)      Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)      Awarding Plaintiffs damages for Defendants' violation of the NYLL notice provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)      Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)      Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)       Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)      All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

January 25, 2021

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

- 26 -

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

September 29, 2020

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Martin Gonzalez Sanchez

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           29 de septiembre 2020

Certified as a minority-owned business in the State New York

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                        Telephone: (212) 317-1200
New York, New York 10165                                        Facsimile: (212) 317-1620
Faillace@employmentcomplieance.com

October 1, 2020

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Lediz Marin

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:                _Ledis O. Marin_

Date / Fecha:                     1 de octubre de 2020

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

—————

Faillace@employmentcompliance.com

October 28, 2020

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Leoncio Noe

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              28 de Octubre 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 23, 2020

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Damaso Cesar Gonzalez Romano (a.k.a. Cesar Gonzalez)

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      23 de Diciembre 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

October 1, 2020

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Hector Gonzalez Sanchez

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       1 de octubre de 2020